UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| IN RE:<br><br>151 MILBANK, LLC,<br><br>Debtor | CHAPTER 11<br><br>CASE NO.: 15-51485(JAM)<br><br><br>APRIL __ 2016 |

**DEBTOR'S (PROPOSED) PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

COUNSEL TO DEBTOR AND
DEBTOR-IN-POSSESSION
William S. Fish, Jr.
Thomas J. Farrell
Hinckley, Allen & Snyder LLP
20 Church Street
18th Floor
Hartford, CT 06103
860 331-2700

151 Milbank, LLC, as the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 Case, respectfully proposes the following Plan of Reorganization under Chapter 11 of the Bankruptcy Code.

### INTRODUCTION

Please refer to the Disclosure Statement, which accompanies the Plan, for a discussion of, among other things, the Debtor's history, business, and assets, as well as a summary and description of the Plan and certain related matters.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

1

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

For purposes of the Plan, all capitalized terms shall have the meanings ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I, but is defined in the Bankruptcy Code, shall have the meaning ascribed to such term in the Bankruptcy Code. In addition, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

1. "Administrative Claim(s)" means a non-Insider Claim that has been timely filed before the Administrative Claim Bar Date or an Insider Claim that has been timely filed before the Insider Administrative Claim Bar Date, in each case for costs and expenses of administration of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including all fees and charges assessed against the Debtor's estate under 28 U.S.C. Section 1930 and Professional Fee Claims.

2. "Administrative Claim Bar Date" means the date that is thirty-five (35) days after the Effective Date, by which date the Holders of Administrative Claims must file with the Bankruptcy Court proof of such claims or, in the case of Professional Fee Claims, final fee applications for such claims in accordance with the Bankruptcy Code and the Bankruptcy Rules.

3. "Allowed" means, when used in reference to a Claim or Interest, an Allowed Claim or an Allowed Interest.

4. "Allowed Claim" or "Allowed Interest" means

   a. `A Proof of Claim or Proof of Interest that was:
      i. Timely filed;
      ii. Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or
      iii. Filed late with leave of the Bankruptcy Court; and
   b.
      i. The Claim or Interest is not a Disputed Claim or a Disputed Interest, or
      ii. The Claim or Interest is Allowed (and only to the extent Allowed) by a Final Order of the Bankruptcy Court.

5. "Avant" means Avant Capital 151 Milbank Avenue LLC, the pre-petition lender to the Debtor.

6. "Avant Reserve Account" means that certain reserve account established pursuant to an order of the Bankruptcy Court granting the Debtor's Motion to Pay Avant's Secured Claim (ECF No. 189), which reserve account holds funds for the benefit of Avant in accordance with such order.

55544671 v14

7. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut and includes the United States District Court for the District of Connecticut to the extent such District Court is exercising original jurisdiction over a case or civil proceeding pursuant to 28 U.S.C. §157(d).

8. "Bankruptcy Rule" means the Federal Rules of Bankruptcy Procedure.

9. "Business Day" means any day other than a Saturday, Sunday, or Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

10. "Cash" means the legal tender of the United States of America.

11. "Chapter 11 Case" means this Chapter 11 Case entitled *151 Milbank, LLC, Case No. 15-51485*.

12. "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

13. "Claims Objection Bar Date" means the deadline for objecting to Claims or Interests, which shall be the date that is thirty-five (35) days after the Effective Date, unless extended by an order of the Bankruptcy Court.

14. "Coan Adversary Proceeding" means the adversary proceeding pending in the Sean Dunne Bankruptcy Case and entitled *Coan v. Dunne Adv No. 15-5019*.

15. "Coan Trustee" means Richard Coan in his capacity as the Chapter 7 Trustee of the Sean Dunne Bankruptcy Case and a party in interest in the Chapter 11 Case.

16. "Coan Trustee Claim" means all Claims, if any, that the Coan Trustee holds or may hold with respect to or against the Debtor including any claim for relief or any cause of action asserted in the Coan Adversary Proceeding to the extent that it asserts a Claim, including a right to payment from the Debtor, but not to the extent that it asserts an ownership interest in the Debtor.

17. "Coan Trustee Interest" means all Interests, if any, that the Coan Trustee holds or may hold with respect to the Debtor including any claim for relief or any cause of action asserted in the Coan Adversary Proceeding to the extent that it asserts an ownership interest in the Debtor, but not to the extent that it asserts a Claim, including a right to payment, against the Debtor.

18. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

19. "Confirmation Hearing" means the hearing on confirmation of the Plan.

20. "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

55544671 v14

21. "Debtor" or "Debtor in Possession" means 151 Milbank, LLC.

22. "Disclosure Statement" means the Disclosure Statement that relates to the Plan and that was distributed in accordance with Section 1125 of the Bankruptcy Code.

23. "Disputed" means, when used in reference to a Claim or Interest in the Plan, any Claim or Interest as to which the Debtor or any other party-in-interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, which objection or proceeding has not been determined by a Final Order.

24. "Disallowed" means (a) A Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, or (b) a Claim or Interest or any portion thereof that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed.

25. "Distribution" means the distribution of Cash in accordance with the Plan.

26. "DIP Lender" means Maxim Credit Group, LLC and/or its successors and assigns.

27. "DIP Lender's Claim" means all sums due to the DIP Lender with respect to the DIP Loan and pursuant to the Final DIP Order and the DIP Loan Documents.

28. "DIP Loan" means the loan made to the Debtor by the DIP Lender in accordance with the Final DIP Order and the DIP Loan Documents.

29. "DIP Loan Documents" means all loan documents executed by the Debtor in connection with or contemplated by the Final DIP Order.

30. "Distribution Date" means the date on which a Distribution is made.

31. "Effective Date" means the date that is the first Business Day after the Confirmation Date on which no stay of the Confirmation Order is in effect, and all conditions precedent to the Effective Date have been satisfied or waived.

32. "Escrow Account" means the escrow account established pursuant to the Plan and into which the Debtor shall deposit the Net Sales Proceeds from a Unit Sale Closing.

33. "Escrow Agent" means the escrow agent with respect to the Escrow Account.

34. "Escrow Agreement" means the escrow agreement entered into regarding the Escrow Account and attached hereto as Exhibit A.

35. "Escrow Balance" shall have the meaning set forth in Section 5.5 of the Plan.

36. "Final DIP Order" means the Final Order Authorizing the Debtor to Obtain Post-Petition Financing, Modifying the Automatic Stay, Allowing the Debtor to Pay Prepetition Secured Claims and Granting Related Relief (ECF No, 188).

37. "Holder" means a Person holding a Claim or Interest, as applicable.

38. "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code and shall include Mountbrook and Gayle Killilea Dunne.

39. "Insider Administrative Claim Bar Date" means the date that is fourteen (14) days before the Confirmation Hearing, by which date any Insider that is the Holder of an Administrative Claim must file with the Bankruptcy Court proof of such claim.

40. "Interest" means any ownership interest in the Debtor.

41. "Lien" means a charge against, or an interest in, property to secure payment of a debt or performance of an obligation.

42. "Manager" means Gayle Killilea Dunne in her capacity as manager of the Debtor.

43. "Members" mean John Dunne in his capacity as trustee of the members of the Debtor.

44. "Mountbrook" means Mountbrook USA, LLC.

45. "Net Sales Proceeds" means the Unit Sale Proceeds received by the Debtor from a Unit Sale Closing after payment of routine, customary, and reasonable closing fees, costs, adjustments, and expenses, including any commission due to any broker(s).

46. "Petition Date" means October 24, 2015, the date on which the Debtor filed this Chapter 11 Case.

47. "Plan" means this plan of reorganization, as it may be altered, amended, supplemented, or modified from time to time.

48. "Professional Fee Claims" means the Administrative Claims of Professional Persons.

49. "Professional Persons" means Persons retained by the Debtor in accordance with Section 327 of the Bankruptcy Code.

50. "Proof of Claim" or "Proof of Interest" means a proof of Claim or Interest filed against the Debtor in this Chapter 11 Case.

51. "Property" means the real property located at 151 Milbank Avenue in Greenwich, Connecticut.

55544671 v14

52. "Schedules" means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

53. "Sean Dunne Bankruptcy Case" means the Chapter 7 bankruptcy case pending in the United States Bankruptcy Court regarding Sean Dunne as the debtor, Case No. 13-50484.

54. "Secured Claim" means a Claim secured by a Lien on property in which the Debtor's estate has an interest, but only if and to that extent that such Claim is Allowed as a Secured Claim.

55. "Unit(s)" means any condominium unit(s) at the Property declared by the Debtor under Connecticut's Common Interest Ownership Act.

56. "Unit Sale Closing" means the closing of the sale of a Unit(s).

57. "Unit Sale Proceeds" means the Cash obtained from the sale of a Unit(s) at a Unit Sale Closing.

## ARTICLE II

## ADMINISTRATIVE CLAIMS

2.1    Payment of the DIP Lender Claim. The DIP Lender shall be indefeasibly paid in Cash the entire Net Sales Proceeds from each Unit Sale Closing, up to the full amount of the DIP Lender's Claim. All such payments shall be made at the Unit Sale Closing in accordance with customary closing practices for the real estate bar in Fairfield County Connecticut. No payments on account of Allowed Administrative Claims or Priority Tax Claims, as provided for in this Article II, and no payments on account of Allowed Claims, as provided for in Article III, shall be made until the DIP Lender's Claim is paid in full. Upon payment of the DIP Lender's Claim in full, the DIP Lender shall release all Liens and mortgages against the Debtor and its assets.

2.2    Payment of Administrative Claims. Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the full amount of such Allowed Administrative Claim on the Effective Date. If such Administrative Claim is not deemed Allowed as of the Effective Date, payment shall be made within twenty (20) days from the date upon which a Final Order is entered allowing the Administrative Claim. All fees due and owing to the United States Trustee shall be paid in full on or before the Effective Date, and after the Confirmation Date, the Debtor will continue to make requisite payments and file quarterly disbursement reports with the United States Trustee until the entry of a final decree pursuant to Bankruptcy Rule 3022. The Escrow Agreement shall provide for these payments.

55544671 v14

2.3     <u>Administrative Claim Bar Date</u>.  All Administrative Claims including Professional Fee Claims must be filed with the Bankruptcy Court no later than the Administrative Claim Bar Date.

2.4     <u>Priority Tax Claims</u>. Each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of its Allowed Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date, or as soon as practical thereafter. If such Priority Tax Claim is not deemed Allowed as of the Effective Date, payment shall be made within twenty (20) days from the date upon which the Bankruptcy Court enters a Final Order allowing the Priority Tax Claim.

2.5     <u>Post Effective Date Professional Fees and Expenses</u>. From and after the Effective Date, and after payment of the DIP Lender's Claim, all Allowed Administrative Claims, and all Allowed Priority Tax Claims pursuant to Article II and after payment of all Allowed Class 1, 2, and 3 Claims pursuant to Article III, the Debtor may, in the ordinary course of business and without further order of the Bankruptcy Court, pay reasonable legal and professional fees and expenses in accordance with the terms of the Escrow Agreement. Upon the Effective Date, any requirement that Professional Persons comply with Sections 327 through 331 of the Bankruptcy Code shall terminate.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article II above, all Claims against and Interests in the Debtor are placed in seven classes and treated as set forth in this Article III. In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified the Administrative Claims and the Priority Tax Claims described in Article II.

3.1     <u>Summary of Classification and Treatment of Classified Claims and Interests</u>.

| CLASS | CLAIM | STATUS | VOTING |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Avant Secured Claim | Unimpaired | No |
| 3 | Unsecured Claims | Impaired | Yes |
| 4 | Insider Claims | Impaired | Yes |
| 5 | Coan Trustee Claim | Impaired | Yes |
| 6 | Interests | Impaired | Yes |
| 7 | Coan Trustee Interest | Impaired | Yes |

3.2     <u>Classification and Treatment of Classified Claims and Interests</u>.

<u>Class 1-Priority Non-Tax Claims</u>. Unless otherwise agreed to by the Holder of a Priority Non-Tax Claim and the Debtor, each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction of its Claim, Cash equal to the

7

55544671 v14

amount of such Allowed Claim on the Effective Date or as soon as practical thereafter. Class 1 is impaired and is entitled to vote on the Plan.

Class 2-Avant Secured Claim. Class 2 consists of the Secured Claim of Avant. In accordance with the order of the Bankruptcy Court granting the Debtor's Motion to Pay Avant's Secured Claim (ECF No. 189), Avant is the Holder of a Claim secured by a valid, properly perfected, unavoidable first priority Lien in certain funds held in the Avant Reserve Account. The amount of Avant's Allowed Secured Claim, if any, shall be determined by the Bankruptcy Court. Upon entry of a Final Order determining the amount of Avant's Allowed Secured Claim, Avant's Allowed Secured Claim shall be paid indefeasibly in full in Cash from the Avant Reserve Account. Any funds held in the Avant Reserve Account after payment of the Avant Allowed Secured Claim in full shall be released to the Debtor and deposited into the Escrow Account subject to the terms of the Final DIP Order. Class 2 is unimpaired and is not entitled to vote on the Plan.

Class 3- General Unsecured Claims. Class 3 consists of the Claims of general unsecured creditors, excluding the Claims of Insiders and the Coan Trustee Claim. Holders of Allowed Claims in Class 3 shall be paid from the Net Sales Proceeds in the Escrow Account after payment in full of the DIP Lender's Claim, all Allowed Administrative Claims, all Allowed Priority Tax Claims, all Allowed Class 1 Priority Non-Tax Claims, and all Allowed Class 2 Claims. Holders of Class 3 Allowed Claims shall receive Cash in the full amount of the Allowed Claims plus interest at the federal judgment rate, but excluding any attorney's fees or costs of collection. Class 3 is impaired and is entitled to vote on the Plan.

Class 4- Insider Claims. Class 4 consists of the Claims of Insiders. Holders of Allowed Claims in Class 4 shall be paid from the Escrow Balance after payment in full of the DIP Lender's Claim, all Allowed Administrative Claims, all Allowed Priority Tax Claims, all Allowed Class 1 Priority Non-Tax Claims, all Allowed Class 3 Claims, and any fees and expenses of professionals pursuant to Section 2.5 of the Plan. A Holder of a Class 4 Allowed Claim shall receive Cash up to the full amount of the Allowed Claim plus interest at the federal judgment rate, but excluding any attorney's fees or costs of collection. Unless the Bankruptcy Court orders otherwise, any Distribution to the Holders of Allowed Claims in Class 4 shall be pari passu with any Allowed Claim of the Coan Trustee in Class 5. Class 4 is impaired and is entitled to vote on the Plan.

Class 5- Coan Trustee Claim. Class 5 consists of the Coan Trustee Claim. The Holder of an Allowed Claim in Class 5 shall have such legal, contractual, or equitable rights as may be determined by the Bankruptcy Court in the Coan Adversary Proceeding including rights to Distributions from the Escrow Balance. Holders of Allowed Claims in Class 5 shall be paid from the Escrow Balance after payment in full of the DIP Lender's Claim, all Allowed Administrative Claims, all Allowed Priority Tax Claims, all Allowed Class 1 Priority Non-Tax Claims, all Allowed Class 3 Claims, and any fees and expenses of professionals pursuant to Section 2.5 of the

Plan. A Holder of a Class 5 Allowed Claim shall receive Cash up to the full amount of the Allowed Claim plus interest at the federal judgment rate, but excluding any attorney's fees or costs of collection. Unless the Bankruptcy Court orders otherwise, any Distribution to the Holder of an Allowed Claim in Class 5 shall be pari passu with any Allowed Claim of an Insider in Class 4. Class 5 is impaired and is entitled to vote on the Plan.

Class 6- Interests. Class 6 consists of all Interests in the Debtor. Holders of Allowed Interests shall retain their membership interests in the Debtor except as may be determined by the Bankruptcy Court in the Coan Adversary Proceeding. Class 6 is impaired and is entitled to vote on the Plan.

Class 7-Coan Trustee Interests. Class 7 consists of the Coan Trustee Interest. Allowance of the Coan Trustee Interest and the extent to which such Allowance results in the disallowance of any other Interests shall be determined by the Bankruptcy Court in the Coan Adversary Proceeding. Class 7 is impaired and entitled to vote on the Plan.

## ARTICLE IV

## ACCEPTANCE OF THE PLAN

4.1     Voting Classes. Classes 3, 4, 5, 6, and 7 are impaired under the Plan, and Holders of Claims or Interests in such Classes are entitled to vote on the Plan. Classes 1 and 2 are unimpaired, and Holders of Claims in Classes 1 and 2 (if any) are not entitled to vote on the Plan.

4.2     Deemed Acceptance If No Votes Cast. If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

4.3     Elimination of Vacant Classes. A Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

4.4     Cramdown. The Debtor reserves the right to seek confirmation under Section 1129(b) of the Bankruptcy Code. The Debtor further reserves the right to modify and amend the Plan.

# ARTICLE V

## EXECUTION AND IMPLEMENTATION OF THE PLAN

      5.1    Completion of the Development. Under the terms of the Plan and in accordance with the Final DIP Order, the Debtor will complete construction of the four-unit condominium development on the Property. The Debtor will prepare and file a declaration of common interest ownership community on the Town of Greenwich Land Records that will allow the Debtor to declare and sell the four completed Units. Pursuant to an order of the Bankruptcy Court, the Debtor has retained a licensed real estate broker to list and market the Units for sale. The procedures for selling the Units are set forth on Exhibit B. The Unit Sales Closings will take place in accordance with customary closing practices for the real estate bar in Fairfield County Connecticut and will be free and clear of all claims and liens including the lis pendens filed by the Coan Trustee. Net Sale Proceeds will be sufficient to make the Distributions required by the Plan.

      5.2    Assumption of Liability. The Debtor shall be responsible for satisfying all of the Allowed Claims in accordance with the terms and provisions of the Plan.

      5.3    Continued Corporate Existence. The Debtor will continue to exist as a limited liability company following confirmation and consummation of the Plan. Except as may be determined by the Bankruptcy Court in the Coan Adversary Proceeding, the Manager and the Members shall remain in control of the Debtor.

      5.4    DIP Loan. On and after the Effective Date, the Debtor and its property shall continue to be bound by the terms and provisions of the DIP Loan, the DIP Loan Documents and the Final DIP Order. Additionally, the DIP Lender shall retain all of the Liens and mortgages granted to it pursuant to the Final DIP Order and the DIP Loan Documents. Confirmation of the Plan shall not discharge the Debtor from its obligations to the DIP Lender under the DIP Loan, the DIP Loan Documents and the Final DIP Order and the DIP Lender retains all rights and remedies against the Debtor and its property that are available to it under the DIP Loan Documents and the Final DIP Order. If the DIP Lender is not paid in full from the sale of Units on or before June 1, 2017, as provided in the Final DIP Order (time being of the essence), the Units shall be auctioned in accordance with the Final DIP Order.

      5.5    Establishment of Escrow Account. Net Sales Proceeds (after payment of all sums due to the DIP Lender pursuant to Section 2.1 of the Plan) and all other income received by the Debtor of every kind shall be deposited into the Escrow Account and disbursed in accordance with and to make the Distributions required by the Plan and the Escrow Agreement. The Net Sales Proceeds shall be used to make payment of all Allowed Administrative Claims pursuant to Article II, all Allowed Priority Tax Claims pursuant to Article II, and all Allowed Class 1 Claims and Allowed Class 3 Claims pursuant to Article III. The Escrow Agreement also shall provide for the payment of certain post-confirmation expenses of the Debtor as set forth in the Escrow Agreement and in Section 2.5 of the Plan. All remaining sums in the Escrow Account (the "Escrow Balance") shall be used to make Distributions to Allowed Class 4 Claims and Allowed Class 5 Claims as required by the Plan. Any remaining balance in the Escrow Account after

such Distributions shall be held pending further order of the Bankruptcy Court in the Coan Adversary Proceeding; provided however that absent an order of the Bankruptcy Court providing otherwise, in the event a Final Order enters in the Coan Adversary Proceeding dismissing the Coan Adversary Proceeding against the Debtor, or in the event a Final Order enters in the Coan Adversary Proceeding entering judgment in favor of the Debtor, then any remaining sums in the Escrow Account shall be released to the Debtor and the Escrow Account shall be terminated.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1   Distributions.  Any Distributions to the Holders of Allowed Claims or Interests shall be in strict compliance with the Plan and the Confirmation Order or as may be subsequently ordered by the Bankruptcy Court.

6.2   Disputed Claims Reserve.  From the Net Sales Proceeds, the Debtor shall reserve in Cash in the Escrow Account, for Distribution on account of each Disputed Administrative Expense Claim and on account of each Disputed Claim in Classes 1 and 3, the full asserted amount with respect to each Disputed Claim or such lesser amount as determined by the Bankruptcy Court.  In addition, with respect to any Distribution on Allowed Claims in Classes 4 and 5, the Debtor shall reserve in Cash in the Escrow Account, for Distribution on account of each Disputed Claim in Classes 4 and 5, the pro rata amount that such Disputed Claim would receive from the Escrow Balance under the Plan on account of such Disputed Claim based on the full amount of such Disputed Claim or such lesser amount as determined by the Bankruptcy Court.

6.3   Delivery of Distributions.  Subject to Bankruptcy Rule 9010 and except as otherwise provided for in the Plan, Distributions to the Holders of Allowed Claims shall be made to (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on the Proof of Claim filed by such Holder, or (b) the last known address of such Holder if no Proof of Claim is filed.  If any Distribution is returned as undeliverable, the Debtor shall undertake reasonable efforts to determine the current address of the Holder of the Claim with respect to such Distribution.

6.4   Time Bar to Cash Payments by Check.  Checks issued pursuant to the Plan on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Any Claim in respect of such voided check shall be made in writing on or before the first anniversary of the Distribution Date.  After such date, all Claims in respect of void checks shall be released and forever barred.

6.5   Compliance with Tax Requirements.  In connection with making Distributions under the Plan, to the extent applicable, the Debtor shall comply with all tax reporting requirements imposed on it by any governmental unit.  All Distributions pursuant to the Plan shall be subject to such reporting requirements.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any reporting requirements of any governmental unit within six (6) months from the date the Holder was first notified of the need

11

for such information, such Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Section 6.5 herein.

# ARTICLE VII

## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

7.1    Allowance of Claims: After the Effective Date, the Debtor shall maintain any and all rights and defenses that the Debtor had with respect to any Disputed Claim or Disputed Interest. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case (including the Confirmation Order and Final DIP Order), no Disputed Claim or Disputed Interest shall become an Allowed Claim or an Allowed Interest unless and until such Claim or Interest shall be Allowed pursuant to a Final Order of the Bankruptcy Court. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court under Bankruptcy Rule 9019, or otherwise, shall be binding on all parties in interest.

7.2    Objections to Claims. Any objections to Claims or Interests shall be filed no later than the Claims Objection Bar Date.

7.3    Amendments to Claims: Except as otherwise provided herein, on or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court. Any such new or amended Claim shall be deemed Disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

7.4    No Distributions Pending Allowance. If a timely objection to a Claim or portion thereof is filed prior to the Distribution Date, no payment or Distribution provided under this Plan shall be made on account of such Claim, or portion thereof, unless and until such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Notwithstanding anything to the contrary in Article 7, the Bankruptcy Court may separate a Disputed Claim into component parts, treat such component parts as though they were separate Claims, and issue a Final Order allowing or disallowing any component part. If the Bankruptcy Court issues a Final Order allowing a component part of a Disputed Claim, then Distributions shall be made on such Allowed component part.

7.5    Distributions After Allowance: To the extent that a Disputed Claim becomes an Allowed Claim, Distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor shall provide the Distribution to which such Holder is entitled under the Plan.

7.6    Allowance of Claims and Interests in Classes 5, 6, and 7. Unless otherwise ordered by the Bankruptcy Court, any objections to the Claims and Interests in Classes 5, 6, and 7 shall be determined by the Bankruptcy Court in conjunction with the Coan Adversary Proceeding.

12

55544671 v14

## ARTICLE VIII

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

8.1     Executory Contracts. Unless otherwise assumed or rejected by Final Order of the Bankruptcy Court, an executory contracts that is (1) not expressly assumed, (2) not the subject of a pending motion to assume as of thirty (30) days after the Effective Date, (3) not an insurance contract provided for in Section 8.2, or (4) not the contract between the Debtor and Mountbrook shall be deemed rejected.

8.2     Insurance Policies. All of the Debtor's insurance policies and any related agreements are treated as executory contracts under the Plan and are hereby expressly assumed by the Debtor. Nothing herein shall constitute or be deemed a waiver of any right or cause of action that the Debtor may have against any insurer under any of such policies.

8.3     Rejection Claims. Any Person who has a Claim as a result of the rejection of any executory contract shall have thirty (30) days after the Effective Date to file a Proof of Claim, failing which any such Claim will be disallowed in full.

8.4     Mountbrook Contract. Unless otherwise ordered by the Bankruptcy Court, any motion to assume the contract between the Debtor and Mountbrook will be heard in conjunction with any timely filed objection to the Claim of Mountbrook.

## ARTICLE IX

## EFFECT OF CONFIRMATION

9.1     Discharge of Indebtedness. Except as provided in the Plan with respect to the DIP Loan and Allowed Claims and Interests including any Claims or Interests Allowed pursuant to the Coan Adversary Proceeding, the occurrence of the Effective Date shall and does act to discharge and release all Claims and all Interests against the Debtor and the Debtor-in-Possession. The Debtor shall be discharged from its status as Debtor-in-Possession and the affairs and business of the Debtor shall thereafter be conducted without Bankruptcy Court involvement except as otherwise provided for in the Plan.

9.2     Exculpation. The Debtor (and its respective affiliates, agents, managers, members, employees, advisors, and attorneys) have, and on the Effective Date shall be deemed to have, participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the Chapter 11 Case and shall not be liable for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance or rejections of the Plan.

9.3     Injunction and Release: Except as provided for in the Plan or the Confirmation Order, including provision for any Claims or Interests Allowed pursuant to the Coan Adversary Proceeding, all Persons that have held, currently hold, or may hold Claims or Interests that have been discharged or terminated pursuant to the Plan (or will be discharged upon completion of the

55544671 v14

Distributions and other actions under the Plan), are permanently enjoined from taking any of the following actions against the Debtor, or its property or assets, on account of any such discharged Claim, debt, liability, Interest, or otherwise: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a setoff right or recoupment; and (5) commencing or continuing any action in any manner and in any place that does not comply with the Plan.

9.4    Protection against Discriminatory Treatment. Consistent with Section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including governmental units, shall not discriminate against the Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtor or other Person with whom the Debtor has been associated, solely because the Debtor has been a Debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

## ARTICLE X

## BINDING NATURE OF PLAN

**THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THIS PLAN, (B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THIS CHAPTER 11 CASE, OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN OR VOTED (OR IS DEEMED TO HAVE VOTED) TO REJECT THIS PLAN.**

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain the maximum legally permissible jurisdiction over this Chapter 11 Case and all Persons with respect to all matters related to this Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim, the resolution of any and all objections to the allowance or priority of any Claim, and the resolution of any and all issues related to the release of Liens upon payment of a Secured Claim;

2. for periods ending on or before the Effective Date, grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable; and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other causes of action that are pending as of the date hereof or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or after the Effective Date;

6. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

7. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

8. issue injunctions and enforce them, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the Plan after the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9. enter and implement such orders, or take such other actions as may be necessary or appropriate, if the Confirmation Order is modified, stayed, reversed or vacated;

10. enter and implement such orders, or take any action as may be necessary or appropriate, regarding the auction process set forth in Section 5.4 hereof;

11. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

12. enter an order concluding this Chapter 11 Case.

55544671 v14

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1 Modification of Plan. Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order; and (2) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in, the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

12.2 Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, if any, and any document or agreement executed pursuant hereto, shall be deemed null and void; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (b) prejudice the Debtor or any other Person's rights in any manner, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor or any other Person.

12.3 Successors and Assigns. The rights, benefits, and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, such Person's heir, executor, administrator, successor, or assign.

12.4 Reservation of Rights. Except as expressly set forth herein, the Plan shall be of no force and effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor with respect to the Plan, shall be, or shall be deemed to be, an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims against, or Interests in, the Debtor, or (2) any Holder of a Claim or an Interest, or other Person, before the Effective Date.

12.5 Severability. If any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6  Filing and Execution of Additional Documents.  On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof. The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval. Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

12.7  Exempt from Transfer Taxes.  Pursuant to Section 1146(a) of the Bankruptcy Code, the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest, or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

12.8  Computation of Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.9  Due Authorization.  Each and every Holder of an Allowed Claim or Interest that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim or Interest, the Distribution provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

12.10  Ratification.  The Confirmation Order shall ratify all transactions effected by the Debtor during the pendency of the Chapter 11 Case.

55544671 v14

12.11 <u>Integration</u>.  The Plan is the complete, whole, and integrated statement of the binding agreement among the Debtor, the Holders of Claims or Interests, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in any action regarding the Plan or any of its provisions.

        THE DEBTOR,
        151 MILBANK, LLC


        By: _____
            Gayle Killilea Dunne,
            Manager

55544671 v14

# EXHIBIT A

## ESCROW AGREEMENT

**[to be attached]**

## EXHIBIT B

1. No Units may be sold for less than $2,500,000 net to the DIP Lender unless otherwise ordered by the Bankruptcy Court.
2. No Units may be transferred, sold, leased, or otherwise disposed of to any person or entity that is an Insider.
3. The broker retained by the Debtor shall conduct a telephonic conference of no more than thirty (30) minutes no less frequently than once per week to advise parties including the Coan Trustee of the status of the marketing of the Units.

55544671 v14